**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WILLIAM HENRY MCAFEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-747-TLW |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff William Henry McAfee seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 16). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**STANDARD OF REVIEW**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## ISSUES

On appeal, plaintiff challenges the ALJ's analysis of the treating cardiologist's opinion. (Dkt. 20). Although the ALJ gave the opinion great weight, plaintiff contends that the ALJ did not adopt two limitations in the opinion and did not explain his reasons for not including those limitations in the residual functional capacity findings. Id.

## BACKGROUND

Plaintiff, then a 51-year old male, protectively filed for benefits under Title II and Title XVI on October 13, 2010. (R. 131-41, 142-47). Plaintiff alleged a disability onset date of June 12, 2011. (R. 131, 144). Plaintiff claimed that she was unable to work due to "heart problems," a defibrillator, "memory loss," and "limited mobility of left arm." (R. 173). Plaintiff's claims for benefits were denied initially on January 4, 2012, and on reconsideration on February 29, 2012. (R. 57-60, 65-73, 77-82). Plaintiff then requested a hearing before an ALJ, and the ALJ held the hearing on June 11, 2013. (R. 34-56). On July 11, 2013, the ALJ issued a decision denying benefits. (R. 12-31). The Appeals Council denied plaintiff's request for review, and plaintiff appealed. (R. 1-6; dkt. 2).

### The ALJ's Decision

The ALJ found that, for purposes of the Title II application, plaintiff was insured through December 31, 2015. (R. 17). Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date of June 12, 2011. Id. The ALJ found that plaintiff has severe

impairments of "coronary artery disease status post myocardial infarction and stenting placement, and obstructive sleep apnea." (Dkt. 17). After reviewing the medical evidence and plaintiff's testimony, the ALJ concluded that plaintiff retained the residual functional capacity to perform the following physical activities: "no more than the occasional lifting up to 20 pounds, no more than the frequent lifting or carrying up to 10 pounds; standing/walking 4 hours out of an 8-hour workday; and sitting 6 hours out of an 8-hour workday. (R. 19). Plaintiff was unable to perform his past relevant work because it qualified as medium work. (R. 24). However, relying on the testimony of a vocational expert, the ALJ determined that plaintiff could perform other work, such as a "parking lot attendant" (light work), "cashier II"/"booth cashier" job (light work), and "touch-up screener" (sedentary work). (R. 25). Accordingly, the ALJ found that plaintiff was not disabled. (R. 26).

**Relevant Medical Evidence**

On November 19, 2012, plaintiff's treating cardiologist completed a medical source statement checklist, in which he opined that plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, stand and/or walk less than four hours per eight-hour workday, and sit six hours in per eight-hour workday. (R. 359). The cardiologist also opined plaintiff "[m]ust periodically alternate sitting and standing to relieve pain or discomfort." Id. The opinion imposes no other limitations. (R. 359-60).

**ANALYSIS**

Plaintiff argues that his treating cardiologist limited him to standing/walking no more than four hours a day and required that he have a sit/stand option. (Dkt. 20; R. 359-60). Plaintiff argues that the ALJ gave "great weight" to the cardiologist's opinion but failed to adopt these two limitations and failed to explain his reasons for not including them in the residual functional

3

capacity findings. (Dkt. 20). Plaintiff contends that this error is reversible because, due to plaintiff's age and limited education, a residual functional capacity for sedentary work would result in a finding of disability. Id.

The Commissioner argues that the ALJ's discussion of the other evidence in the record, particularly the treatment notes showing that plaintiff's condition improved drastically after placement of the stent and plaintiff's own reports about his activity levels, supports the ALJ's decision not to include a four-hour limitation on plaintiff's ability to stand and walk. (Dkt. 22). The Commissioner also argues that the ALJ was not required to adopt all of the restrictions in the treating cardiologist's opinion. Id. The Commissioner further argues that the ALJ's step five findings are supported by substantial evidence because "[t]he ALJ clearly found significantly more than the full range of sedentary work, with greater than sedentary lifting and standing abilities, as well as the full sedentary sitting requirement." Id. at n.10.

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference

4

and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2), now (c)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Anderson v. Astrue, 319 F. App'x 712, 717 (10th Cir. 2009) (unpublished).[1]

If the ALJ decides to reject part of an opinion, he must also explain his reasons for doing so. See Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Id. (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) and Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004). This analysis applies to opinions that the ALJ gives great weight. See generally Dutton v. Colvin, ___ F. App'x ___, 2015 WL 9273131 (10th Cir. December 21, 2015) (unpublished). Accordingly, the ALJ was required to give good reasons for his failure to adopt all of the restrictions in the treating cardiologist's opinion.

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

**Stand/Walk Restriction**

Both parties mis-read the ALJ's decision. The ALJ did adopt the four-hour limitation on standing and walking. (R. 19). This limitation represents a reduction in the ability required for the full range of light work, which is defined as the ability to stand or walk for six hours in an eight-hour day. See 20 C.F.R. §§ 404.1567, 416.967; SSR 83-10. Although the ALJ references light work elsewhere in the decision, his residual functional capacity findings make clear that he found plaintiff could perform less than the full range of light work. (R. 19, 24).

However, plaintiff's argument that a limitation to standing for four hours qualifies as sedentary work is not persuasive. The Tenth Circuit has upheld a finding that a claimant could perform light work with a four-hour limit on standing and walking when the ALJ's findings were supported by substantial evidence in the form of a vocational expert's testimony. See Newburn v. Barnhart, 62 F. App'x 300, 302, 304 (10th Cir. 2003) (unpublished). See also SSR 83-10 (noting that a few jobs involving "some pushing and pulling of arm-hand or leg-foot controls" qualify as light work even though they meet the stand/walk requirements of sedentary work).

**Sit/Stand Option**

In his discussion of the medical evidence, the ALJ mentions that the treating cardiologist's opinion included a periodic sit/stand option. (R. 22). However, in his analysis of that opinion, the ALJ did not discuss the sit/stand limitation. (R. 24). The ALJ stated that he gave the cardiologist's opinion

> great weight as it is substantiated by the objective medical evidence, and portrays a more accurate assessment of the claimant's limitations. Dr. [Alan] Kaneshige was of the opinion the claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 4 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday.

Id. The Court interprets the ALJ's analysis to include adoption of only those findings specifically listed; therefore, the ALJ did not adopt the sit/stand option. This limited analysis is the only discussion of the weight given to the cardiologist's opinion and does not include the ALJ's reasons for deciding not to give controlling weight to the opinion or for rejecting the sit/stand option.

The ALJ's failure to explain his reasoning, however, is harmless error because the ALJ's step five findings accommodate all of the limitations in the cardiologist's opinion.

**Step Five Findings**

At the hearing, the ALJ posed a hypothetical to the vocational expert in which plaintiff could "perform work at the medium level defined as no more than occasional lifting up to 50 pounds, no more than frequent lifting or carrying up to 25 pounds. Standing/walking four hours out of an eight-hour workday. Sitting six hours out of an eight-hour workday." (R. 53). The vocational expert testified that she could not identify any medium jobs with those limitations due to the standing requirement, but, based on her experience, she could identify several light jobs. (R. 53, 55). The vocational expert stated that plaintiff could perform light work as a "parking lot attendant" or "cashier II." (R. 54). Within the "cashier II" category, the vocational expert identified the job of "booth cashier," which would accommodate the standing and walking limitation because "[b]ooth cashiers allow a person to sit or stand." Id. The vocational expert testified that there are 2,000 booth cashier jobs in Oklahoma and 170,000 nationwide. (R. 53-54).

At step five, the ALJ must prove that plaintiff can:

> Engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the

> national economy" means work which exists in significant numbers either in the region where such individual lives *or* in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (emphasis added). The booth cashier job satisfies all of the limitations set forth in the cardiologist's opinion, including the sit/stand option. Therefore, the ALJ's failure to include the sit/stand option in the residual functional capacity findings or state his reasons for rejecting that limitation is harmless error because the ALJ identified other work existing in significant numbers nationally that plaintiff can perform, even with the inclusion of the sit/stand option. See Stokes v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (finding harmless error at step five even though two of the four jobs cited by the ALJ conflicted with the residual functional capacity findings because the remaining jobs existed in significant numbers [11,000 regionally and 152,000 nationally] satisfied the ALJ's burden).

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 11th day of March, 2016.

_____
T. Lane Wilson
United States Magistrate Judge